IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CRAIG ROBINSON,<br><br>　　Plaintiff,<br><br>vs.<br><br>CARDINAL CONSTRUCTION, INC.,<br><br>　　Defendant. | No. C12-2089<br><br>ORDER DENYING MOTION FOR LEAVE TO AMEND |

This matter comes before the Court on the Motion for Leave to Amend Petition (docket number 13) filed by Plaintiff Craig Robinson on March 11, 2014, the Resistance (docket number 14) filed by Defendant Cardinal Construction, Inc. on March 28, and the Reply (docket number 16) filed by Robinson on April 4. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## I. PROCEDURAL HISTORY

On December 5, 2012, Plaintiff Craig Robinson filed a Petition at Law in the Iowa District Court for Black Hawk County, seeking judgment against his former employer, Defendant Cardinal Construction, Inc. Robinson claims that Cardinal discriminated against him due to a perceived disability, in violation of the Iowa Civil Rights Act (Iowa Code chapter 216) and the Americans With Disabilities Act. Cardinal removed the action to this court on December 17, 2012.

Also on December 17, Robinson filed an amended petition at law in state court. The amended petition was identical in all respects to Robinson's initial petition, with the addition of allegations regarding the Notice of Right to Sue received from the United States

Equal Employment Opportunity Commission, dated December 6, 2012. Cardinal filed an answer to the amended petition on March 15, 2013.

On March 18, 2013, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties, with one exception: the trial ready date was extended from June 30, 2014 to July 30, 2014. Among other things, the parties agreed to a May 30, 2013 deadline for amending pleadings, with all discovery to be completed not later than February 28, 2014. On February 10, 2014 — two weeks before the deadline for completion of discovery — the parties filed a joint motion for extension of deadlines. At that time, the parties had not yet taken any depositions because they believed "it may be necessary to exchange additional discovery requests and responses." The motion for extension of pretrial deadlines was denied.

On February 27 — one day before the deadline for completion of discovery — Robinson's attorney took the deposition of Jon Mixdorf, executive vice-president of Cardinal. In his brief, Robinson asserts that "[b]ased on facts learned at Mr. Mixdorf's deposition, the Plaintiff filed a motion for leave to amend the petition on March 11, 2014 to assert a claim under the Family Medical Leave Act of 1993 ("FMLA")."[1] Cardinal asserts that Robinson's claim of newly learned facts "is disingenuous and misleading."[2]

## II. RELEVANT FACTS

On March 15, 2010, Robinson was injured in an accident while riding a bicycle and fractured his clavicle and upper portion of his hip. At that time, Robinson was employed by Cardinal. Following the accident, Cardinal granted Robinson leave to rehabilitate his hip, pursuant to the Family Medical Leave Act. Robinson claims that after receiving treatment for his injuries, his physician released him to return to work with no restrictions on May 4, 2010. Cardinal terminated Robinson's employment, effective June 14, 2010.

---

[1] Robinson's Brief (docket number 13-2) at 2.

[2] Cardinal's Resistance (docket number 14) at 3.

On June 23, 2010, with the assistance of an attorney, Robinson filed a claim with the Waterloo Human Rights Commission.[3] Attached to the complaint is a narrative entitled "STATEMENT OF CRAIG A. ROBINSON." After describing his accident and subsequent termination, Robinson asserts that "I have been clearly discriminated against for a perceived disability." In his concluding paragraph, Robinson states:

> In addition, I think that this is a violation of the Family Medical Leave Act. It is my understanding that I can have 12 weeks without penalty for a serious health condition. The fracture was clearly serious originally, but ultimately it healed perfectly but the employer chose to disregard the medical opinions of the orthopaedic surgeon and used this as an ongoing excuse to continue the FMLA period until they terminated me.

Statement of Craig A. Robinson at 2 (docket number 14-2 at 6).

The Iowa Civil Rights Commission issued an Administrative Release (right-to-sue letter) on September 26, 2012. Robinson timely filed his petition at law in the state district court. In his petition and amended petition, Robinson claimed violations of the Iowa Civil Rights Act (Iowa Code chapter 216) and the Americans With Disabilities Act. Now, Robinson asks that he be permitted to file a second amended petition at law, adding a count for an alleged violation of the Family Medical Leave Act of 1993. Specifically, in his proposed second amended petition at law, Robinson asserts:

> 31. That upon obtaining a release to return to work with no restrictions from his physician on May 4, 2010, Plaintiff was entitled to be restored to the position of employment he held when his FMLA leave commenced or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

---

[3] Copies of the complaint form and cover letter were attached to Cardinal's resistance as Exhibits B and C. See docket numbers 14-2 and 14-3.

> 32. That instead of restoring Plaintiff to his previous position or an equivalent position, Defendant waited until the expiration of the 12 week period set forth in 29 U.S.C. §2612(a)(1) and terminated Plaintiff's employment as of June 14, 2010.

[Proposed] Second Amended Petition at Law (docket number 13-1) at 4.

In support of his motion, Robinson states in his brief that the basis for the FMLA claim only became "apparent" when "Mr. Mixdorf gave testimony at his deposition from which a court could reasonably conclude that Cardinal violated the FMLA and used the expiration of Mr. Robinson's FMLA leave as a pretext for terminating his employment in violation of the ADA and the ICRA."[4] Robinson's brief purports to summarize Mixdorf's deposition testimony, and a portion of the transcript was attached to Robinson's reply as Exhibit 1. *See* docket number 16-1.

In its resistance, Cardinal asserts that Robinson knew of the relevant facts all along. In fact, one of Cardinal's attorneys submitted an affidavit indicating that Robinson's attorney told her on February 24, 2014 that "he had decided not to bring an FMLA claim because the damages available for an FMLA claim would be duplicative of the damages available for claims under the Iowa Civil Rights Act and the Americans With Disabilities Act."[5] In reply, Robinson's attorney does not deny making the statement, but claims the decision to amend was "based on information learned after his conversation" with Cardinal's attorney.[6]

---

[4] Robinson's Brief (docket number 13-2) at 2-3.

[5] Affidavit of Stacey Hall at 1, ¶ 2 (docket number 14-4). Hall's affidavit states that attorney John Walker, Jr. made the statement during a break at Robinson's deposition on February 24, 20<u>13</u>. The cover page of Robinson's deposition shows that it was taken on February 24, 20<u>14</u>. *See* docket number 14-1.

[6] Robinson's Reply (docket number 16) at 4.

4

## III. DISCUSSION

Unless it is permitted to amend its pleading "as a matter of course," a party may only amend with the opposing party's written consent or the Court's leave. FED. R. CIV. P. 15(a). Here, Robinson is not entitled to amend his complaint as a matter of course, and Cardinal does not give its consent. Accordingly, Robinson asks for the Court's leave to amend. The rules impose a liberal standard in determining whether an amendment should be permitted. *See* RULE 15(a)(2) ("The court should freely give leave when justice so requires."). A different standard applies, however, if the motion for leave to amend is filed *after* the deadline for amending pleadings as established in the scheduling order. An extension of the deadline under the scheduling order requires a showing of "good cause" and requires the judge's consent. RULE 16(b)(4).

"The interplay between RULE 15(a) and RULE 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). That is, when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, the good-cause standard of RULE 16(b) governs, rather than the more liberal standard of RULE 15(a). *Id.* (citing *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). "If we considered only RULE 15(a) without regard to RULE 16(b), we would render scheduling orders meaningless and effectively would read RULE 16(b) and its good cause requirement out of the FEDERAL RULES OF CIVIL PROCEDURE." *In re Milk Products Antitrust Litigation*, 195 F.3d 430, 437-38 (8th Cir. 1999) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 417, 419 (11th Cir. 1998)). *See also Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012).

Here, the deadline for amending pleadings was May 30, 2013. Robinson's instant motion was not filed until March 11, 2014 — more than nine months later. Accordingly, the Court must first determine whether Robinson has shown good cause for modifying the scheduling order. "The primary measure of good cause is the movant's diligence in

5

attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). Prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, but the court will generally not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *Id.* at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)).

The deadline for amending the pleadings is routinely set early in the action, well before the deadline for completion of discovery. In this case, for example, the parties agreed to a May 30, 2013 deadline to amend pleadings, with the discovery deadline set on February 28, 2014. It is not uncommon for a party to learn facts during the course of pretrial discovery which may justify an amendment to the pleadings. *See, e.g., McCormack v. United States*, 2011 WL 2669447 (E.D. Mo. 2011) (granting leave to amend complaint four months after the deadline when the delay was "at least partially caused" by the nonmovant); *Schwend v. U.S. Bank*, 2011 WL 5039812 (E.D. Mo. 2011) (granting leave to amend complaint four months after the deadline due to discovery obtained from the defendant). The issue in this case is whether good cause to amend exists based on "newly discovered evidence," or whether the facts were known to Robinson all along.

In analyzing this issue, it is necessary to consider Robinson's proposed FMLA claim, and what must be proved to support the claim. Cardinal describes Robinson's claim as an "interference" claim, and asserts he "was aware of the facts that form the basis of his FMLA claim — that he was not restored to an equivalent position and terminated — no later than June of 2010."[7] In his reply, Robinson argues that his proposed FMLA claim should be analyzed as a "discrimination" claim, rather than an "entitlement" claim, and asserts that when he filed his complaint with the Waterloo Human Rights Commission,

---

[7] Cardinal's Resistance (docket number 14) at 2.

"it is clear that he did not have a factual basis for asserting an FMLA 'discrimination' claim because he did not have knowledge of the facts demonstrating a causal link between his exercise of FMLA leave and his termination until the discovery process had been completed."[8]

The Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, is intended to entitle employees to take reasonable leave for medical reasons, among other things. § 2601(b)(2). Generally, an employee is entitled to 12 workweeks of leave because of a serious health condition that makes the employee unable to perform the functions of his employment. § 2612(a)(1)(D). When an employee returns from leave, he must be restored to the position he held when the leave commenced, or to an equivalent position. § 2614(a)(1). The Act makes it unlawful to interfere with an employee's rights.[9]

---

[8] Robinson's Reply (docket number 16) at 2.

[9] 29 U.S.C. § 2615 provides:
    (a) Interference with rights
        (1) Exercise of rights
        It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
        (2) Discrimination
        It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
    (b) Interference with proceedings or inquiries
    It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual--
        (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;
        (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or
        (3) has testified, or is about to testify, in any inquiry or proceeding
(continued...)

In its resistance, Cardinal characterizes Robinson's proposed FMLA claim as an "interference" claim, and asserts that none of the "discoveries" learned by Robinson at Mixdorf's deposition "form the basis of the FMLA claim Plaintiff seeks to add to his petition."[10] In his Reply, Robinson denies that his proposed claim is an "entitlement" claim, and argues that it should be analyzed as a "discrimination" claim.[11] Robinson asserts that he "did not have knowledge of the facts demonstrating a causal link between his exercise of FMLA leave and his termination until the discovery process had been completed."[12]

In *Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006), and *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), the Court discussed at length the types of claims existing under the FMLA. In *Stallings*, the Court identified "interference" claims under subsection (a)(1) and "retaliation" claims under subsection (a)(2). "In an interference claim, an 'employee must show only that he or she was entitled to the benefit denied.'" 447 F.3d at 1050 (quoting *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003)). An employee can prove interference with an FMLA right "regardless of the employer's intent." *Id.* The *Stallings* Court recognized that interference claims are sometimes confused with discrimination or retaliation.

> Confusion often arises as to whether an employee's FMLA claim "is really about interference with his substantive rights, not discrimination or retaliation." The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under

---

[9](...continued)
  relating to any right provided under this subchapter.

[10] Cardinal's Resistance (docket number 14) at 4.

[11] Robinson's Reply (docket number 16) at 2.

[12] *Id.* at 3.

8

> the FMLA, while the retaliation claim requires proof of retaliatory intent. "Although in some circumstances, a given set of facts will fall clearly into either (a)(1) or (a)(2), it appears that the lines between the two categories are not hard and fast."

*Stallings*, 447 F.3d at 1051.

In *Pulczinski*, the Court refined its analysis and recognized three types of claims arising under subsections (a)(1) and (a)(2). The first type, which the Court described as an "entitlement" claim, "occurs where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." 691 F.3d at 1005. Under this theory, an employee "need not show that an employer acted with discriminatory intent." *Id.* The second type of claim recognized in *Pulczinski*, referred to as a "retaliation" claim, occurs when an employer takes an adverse action against an employee who "opposes any practice made unlawful under the FMLA." *Id.* at 1005-06. The third type of claim, which is similar to the second claim, occurs "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Id.* at 1006. The *Pulczinski* Court describes this as a "discrimination" claim. Under this scenario, the employer does not prevent the employee from receiving FMLA benefits, but after the employee has exercised his statutory rights, "the employer discriminated against him in the terms and conditions of employment." *Id.*

Turning to the facts in the instant action, Robinson was granted leave to rehabilitate his hip, pursuant to the FMLA. At the conclusion of his leave, Robinson was entitled to be reemployed in the same position, or an equivalent position, if he was physically able to perform. In his proposed amended petition, Robinson notes that he "was entitled to be restored to the position of employment he held when his FMLA leave commenced," and asserts that instead of restoring him to his previous position or an equivalent position, he was terminated. The Court agrees with Cardinal that this is properly considered an "interference" or "entitlement" claim. That is, Robinson claims that he was entitled to be

restored to his previous position, and Cardinal failed to comply with the law in that regard. Robinson's proposed amended complaint does *not* allege discrimination or retaliation under the FMLA. Accordingly, Robinson's proposed FMLA claim does not require a showing that Cardinal acted with discriminatory intent, or that it was motivated by Robinson's exercise of his FMLA right to medical leave.

Robinson claims that it was not until he took the deposition of Mixdorf on February 27, 2014 that he learned that he has an FMLA claim. Specifically, Robinson attaches importance to three facts learned at the deposition: (1) the termination letter signed by Mixdorf was actually written by someone else, (2) Mixdorf "did not understand the FMLA policy" in Cardinal's Employment Policy Manual, and (3) Cardinal instructed Robinson to apply for unemployment benefits. Cardinal argues that these facts were known to Robinson in June 2010, or have no import to his proposed FMLA claim.

First, it makes no sense that Robinson "learned" at Mixdorf's deposition that "Cardinal instructed Mr. Robinson to apply for unemployment benefits." Obviously, if the allegation is that Cardinal told Robinson to apply for unemployment benefits, then Robinson knew that fact when the instruction was allegedly given. When Robinson testified at his deposition three days earlier, he acknowledged that "Angie" told him to file a claim for unemployment.[13] Moreover, when Robinson filed his complaint with the Waterloo Human Rights Commission on June 23, 2010, he stated that "I was instructed to file unemployment which I did."[14] So, that fact can hardly be considered new.

It may be that Robinson learned for the first time on February 27 that the termination letter signed by Mixdorf was not actually written by him. Apparently, the letter (consisting of three sentences) was drafted by Angie, and Mixdorf acknowledged at his deposition that it was "extremely poorly written." Robinson fails to advise the Court,

---

[13] Deposition of Craig Robinson, 57:18-20 (docket number 14-1 at 2).

[14] Statement of Craig A. Robinson at 1 (docket number 14-2 at 5).

10

however, regarding why that fact may be significant. It is undisputed Robinson was terminated from his employment. Whether the termination letter was drafted by Mixdorf, or by someone acting on Mixdorf's behalf, is irrelevant to the issue of whether the termination violated Robinson's FMLA right to reinstatement. Similarly, whether Mixdorf "understood" the FMLA policy found in Cardinal's employment manual is not relevant to whether Cardinal's actions violated federal law.

Accordingly, all of the facts necessary for Robinson to pursue his proposed FMLA claim were known to him in June 2010. Robinson admitted as much when he filed a claim with the Waterloo Human Rights Commission on June 23, 2010 and asserted "I think that this is a violation of the Family Medical Leave Act."[15] Accordingly, if Robinson intended to pursue an FMLA claim, he could have included it in his initial petition or amended petition. Obviously, he could have amended his petition prior to the pleadings deadline of May 30, 2013, some three years after the events.

Moreover, even *if* Mixdorf's deposition testimony provided Robinson with unknown facts necessary for an FMLA claim, the Court concludes that he was not diligent in attempting to discover those facts earlier. In the complaint filed with the Waterloo Human Rights Commission on June 23, 2010, Robinson opined "I think that this is a violation of the Family Medical Leave Act." Instead of diligently pursuing discovery which may support such a claim, however, Robinson waited until the penultimate day of discovery before taking Mixdorf's deposition. Furthermore, Robinson's attorney disclosed to Cardinal's attorney that he had deliberately failed to bring an FMLA claim for strategic reasons.

In summary, the Court concludes that Robinson has not established good cause for failing to amend his pleadings prior to the pleadings deadline. The facts supporting Robinson's proposed FMLA claim were known to Robinson all along. To the extent

---

[15] *Id.* at 2 (docket number 14-2 at 6).

Robinson did not know some details, he was not diligent in his efforts to discover those details, despite the fact that he believed there had been an FMLA violation. Accordingly, the Court concludes that Robinson's motion for leave to amend petition should be denied.[16]

## ORDER

IT IS THEREFORE ORDERED that the Motion for Leave to Amend Petition (docket number 13) filed by the Plaintiff is **DENIED**.

DATED this 9th day of April, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[16] The Court finds it unnecessary to consider Cardinal's alternative argument that the FMLA claim is time-barred.